ALBERTA JOANIS, ADMINISTRATRIX (ESTATE OF EDMUND C. JOANIS) *v.* MANFRED G. ENGSTROM ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued October 15—decided December 2, 1948

*Morton E. Cole,* with whom were *Milton Krevolin* and, on the brief, *Cyril Cole,* for the appellant (plaintiff).

*Joseph V. Fay, Jr.,* with whom, on the brief, was *Harrison D. Schofield,* for the appellee (named defendant).

*Henry H. Hunt* appeared for the appellee (defendant Natale).

JENNINGS, J. This is a negligence action. Plaintiff's decedent, Edmund Joanis, died as a result of injuries received in a collision with the automobiles driven by the defendants and the plaintiff had a verdict. The verdict was set aside by the trial court and the plaintiff appealed from this ruling and assigned errors based on the finding. The dispute between the parties is almost if not wholly concerned with the position of the cars on the road at the time of the impact.

The jury could reasonably have found the following facts: Main Street in Glastonbury connects Glastonbury and East Hartford and runs north and south. At the point of collision it is constructed of two ten-foot slabs of concrete with a six-foot shoulder on the west and a five-foot shoulder on the east. The road at this point is substantially straight and level. It was dry.

On December 23, 1941, about 3:45 p.m., Edmund Joanis was operating a Chevrolet automobile northerly on this road. At the same time the defendant Natale was driving his Buick car southerly along the same highway. The defendant Engstrom was also driving his Pontiac southerly, following the Natale car at a distance of two or three car lengths. The cars driven by Joanis and Natale sideswiped each other, and marks of the contact were evident on the rear left fenders of both cars. As a result of this contact the Natale car came to rest west of the traveled portion of the highway. The lighter Joanis car was turned to its left and it and the Engstrom car met head on. The latter came to rest west of the highway and the former in approximately the center of the west lane, headed south. All of the cars were thus west of the center line of the highway. There were tire marks in the west lane but no marks or other evidence of a collision in the east lane. Engstrom, Natale and Dubicki, a passenger in

the latter's car, testified that the cars driven by the defendants were to the west of the center line at the time of the impact and that the Joanis car was to its left or west of the center line of the highway. The testimony of the only other eyewitness who took the stand, a passenger in a car behind Joanis, was less definite but to the same general effect.

The crash between the Engstrom and Joanis cars was severe. Mrs. Engstrom, who was riding with her husband, was killed, and Joanis was taken to the Hartford Hospital in critical condition. The hospital record in evidence shows that his most serious injury was a compound basal skull fracture with contusion and edema of the brain stem. He was conscious on admission to the hospital on December 23 but lapsed into a deep coma from which he emerged gradually. He vomited blood repeatedly. On December 27 he asked if he had been in an accident and wanted to know how sick he was. On December 30 he was fairly alert, but at his best he had periods of unconsciousness and complained of severe headaches. On January 2 he asked how many days he had been in the hospital. His condition gradually deteriorated and he died on January 5. The woman who was Joanis' wife at the time of the accident, but who has remarried, and her mother testified that when they visited Joanis in the hospital he talked with them and told them that at the time of the accident his car was on his own right-hand side of the road and that two cars were coming toward him on his side of the road. He said that the first car hit him in the rear and that he ran into the second car head on. This statement appears three times in the record in substantially the same form.

The basic question on the motion is whether the statement of Joanis was sufficient to justify the verdict in view of the testimony of all of the surviving wit-

nesses to the contrary, and particularly in view of the absence of any physical evidence of the collision in the east lane. We are reviewing the action of the trial court in setting aside the verdict to determine whether its discretion was abused rather than the verdict itself. Conn. App. Proc. § 114; *Keyes* v. *Churchward,* 135 Conn. 115, 119, 61 A. 2d 668. The parties have cited numerous Connecticut cases dealing with the power of the court to set aside a verdict in situations of this kind, but the principle is well established. A verdict of a jury must stand if on all the evidence reasonable persons could reasonably arrive at it, but it is the duty of the court to set it aside when it is apparent from physical facts or other evidence compelling belief that the jury were swayed by improper motives. *Howe* v. *Raymond,* 74 Conn. 68, 71, 49 A. 854; Conn. App. Proc., p. 151.

The legal and factual effect of the statement attributed to Joanis must be examined with care, since the plaintiff's case stands or falls with it. It was admitted under General Statutes, § 5608, as a declaration of a deceased person relevant to the matter in issue in an action by his representative. Such evidence was inadmissible at common law but the change made by statute has been approved by eminent authority. 5 Wigmore, Evidence (3d Ed.) § 1576; 12 B. U. L. Rev. 396, 412; Morgan, Law of Evidence, p. 37 et seq., p. 89 et seq. The statute is discussed in *Mulcahy* v. *Mulcahy,* 84 Conn. 659, 661, 81 A. 242; *Walter* v. *Sperry,* 86 Conn. 474, 476, 85 A. 739; *Furcolo* v. *Auto Rental Co.,* 110 Conn. 540, 542, 148 A. 377; and note, 96 A. L. R. 686. The declaration is evidence of the facts stated; *Setchel* v. *Keigwin,* 57 Conn. 473, 479, 18 A. 594; *Norbutas* v. *Bendler,* 116 Conn. 728, 729, 166 A. 388; but the weight is ordinarily for the jury; *Setchel* v. *Keigwin,* supra; *Nagle* v. *Boston & N. Ry.*

*Co.,* 188 Mass. 38, 41, 73 N. E. 1019. The defendants do not seriously dispute these legal propositions but claim that the statement itself will not prevail against the overwhelming weight of evidence to the contrary, a view in which the trial court, in a studied memorandum, concurred. The danger of relying too heavily on such statements is pointed out in discussing the weaknesses inherent in the somewhat similar declarations by a person in articulo mortis. *Mitchell* v. *State,* 71 Ga. 128, 141.

The plaintiff is relying on the statement and she cannot complain if she is held to the words spoken and the circumstances under which the statement was made. It was claimed to have been made by a person who was so badly injured that he died within a few days and who after the crash was unconscious most of the time and in his lucid interval was still suffering severely from the effects of his injury. The only witnesses who testified to the statement were the woman who was Joanis' wife at the time of the accident and her mother. Under Cum. Sup. 1939, § 1305e, and General Statutes, §§ 5156, 4980, the former and her two minor children would be the recipients of the amount recovered after certain expenses were paid. These witnesses were far from disinterested. It is unnecessary to repeat the statement. It is of no assistance in determining where the accident occurred unless it is interpreted to mean that it occurred on the east or Joanis' right-hand lane.

In *Sommers* v. *Adelman,* 91 Conn. 596, 101 A. 7, the action of the trial court in setting aside the verdict was sustained although the plaintiff's testimony on his own behalf made out a prima facie case. All of the other eyewitnesses gave a different version of the accident. This court said (p. 597): "The plaintiff's case, in so far as the element of care on his part is concerned,

stands entirely upon his own testimony. That testimony, in so far as it touched the matter of vital importance, bears such marks of improbability, and is so opposed to that of the other witnesses, that the trial judge was justified in holding that it was so overwhelmingly disproved and discredited that the verdict of the jury, based upon an acceptance of it, could not have been arrived at reasonably." In the case at bar the situation is much stronger for sustaining the trial court. The plaintiff must rest her case on the declaration of a deceased person and is met by the same countervailing evidence of the other eyewitnesses plus the fact that there was complete absence of any physical evidence of the collision in the east lane. The court was justified in setting aside the verdict. Its discretion in that regard is limited but it was not abused. *Masi* v. *General Ice Cream Corporation,* 120 Conn. 259, 262, 180 A. 455; *Dudas* v. *Ward Baking Co.,* 104 Conn. 516, 518, 133 A. 591. "The obviously greater opportunity of the trial judge than that afforded us by the printed record, to evaluate correctly the statements of witnesses, and other aids enjoyed by him at the time of the trial, entitled his conclusions to great weight in this court." *Masi* v. *General Ice Cream Corporation,* supra. There was no error in granting the motion to set aside the verdict.

All of the other assignments of error in the appeal revolve around the admission of evidence of tire marks on the highway. These assignments are not pursued in the plaintiff's brief and are not considered. *Gillette* v. *Schroeder,* 133 Conn. 682, 685, 54 A. 2d 498; Conn. App. Proc. § 165.

There is no error.

In this opinion MALTBIE, C. J., BROWN and DICKENSON, Js., concurred; ELLS, J., dissented.