SOPHIA P. ROSALES *v.* DAVID W. LUPIEN, JR.
(AC 17476)

O'Connell, C. J., and Landau and Spear, Js.

Submitted on briefs June 5—officially released September 15, 1998

*Angelo A. Ziotas* filed brief for the appellant (plaintiff).

*Claudia A. Baio* and *Kenneth G. Williams* filed a brief for the appellee (substitute defendant).

*Opinion*

O'CONNELL, C. J. In this action for personal injuries, the plaintiff appeals from the judgment for the substitute defendant following a jury trial. The plaintiff claims that the trial court improperly (1) excluded evidence that was admissible under the dead man's statute and (2) ruled that the plaintiff could not ask the defendant administrator in the jury's presence whether he was willing to waive the attorney-client privilege. We affirm the trial court's judgment.

The jury reasonably could have found the following facts. Beginning in December, 1993, the plaintiff, a nurse's aide, provided companionship and light cleaning for the original defendant, David W. Lupien, Jr., who was bedridden. During this time, the plaintiff stayed at Lupien's home seven nights a week. On May 28, 1994, the plaintiff was injured in a fall while moving a washing machine into Lupien's basement. She claims that her fall was caused by defects in the basement staircase.

Lupien died on April 30, 1996, and the defendant Thomas F. Foley, administrator of Lupien's estate, was substituted as the defendant.

I

The plaintiff sought to introduce evidence of certain statements made by Lupien before his death. These included oral statements that Lupien (1) apologized for the condition of the stairs, (2) admitted responsibility for the plaintiff's injuries, (3) offered to pay the plaintiff's medical bills, (4) urged her to make a claim against his homeowner's insurance policy and (5) offered to split the insurance proceeds with her.

The trial court admitted into evidence Lupien's apology for the fall, and his statements that he knew the steps were bad and intended to have them fixed. The court, however, did not admit Lupien's statements concerning offers to pay the plaintiff's medical bills or his statements regarding the homeowner's policy and proceeds therefrom.

The plaintiff contends that the excluded statements were admissible under General Statutes § 52-172,[1] commonly known as the dead man's statute. The dead man's

---

[1] General Statutes § 52-172 provides in relevant part: "In actions by or against the representatives of deceased persons . . . the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence. . . ."

statute creates an exception to the hearsay rule. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) §§ 11.1–11.25. Its purpose is to create an equal footing between the living and the dead parties. Id., § 11.8.7; *Rowland* v. *Philadelphia, Wilmington & Baltimore R.R. Co.*, 63 Conn. 415, 417, 28 A. 102 (1893). Although the statute is to be interpreted liberally, "it does not follow that the privilege conferred by it is entirely without exceptions or limitations in operation." *Doyle* v. *Reeves*, 112 Conn. 521, 526–27, 152 A. 882 (1931). In other words, every utterance of a deceased person is not automatically entitled to come into evidence solely because the speaker has died. This is particularly true where its admission would violate another well established rule of evidence.

The defendant argues that the statements were properly excluded because they were offers of compromise. "It has long been the law that offers relating to compromise are not admissible on the issue of liability. . . . Where it is not clear whether the statement is an offer of compromise or an admission of liability . . . and the motive of the declarant is subject to speculation and conjecture, the statement must be excluded." (Citations omitted; internal quotation marks omitted.) *Tuite* v. *Stop & Shop Cos.*, 45 Conn. App. 305, 313–14, 696 A.2d 363 (1997). Unlike Lupien's apology and his statements concerning the poor condition of the stairs, his statements about the homeowner's policy and paying the plaintiff's medical bills were not clearly admissions of liability. Rather, they are more accurately characterized as offers of compromise and hence are not admissible. See id.

The dead man's statute was intended to remove the unfair advantage previously possessed by living litigants as against the representatives of deceased persons. *Doyle* v. *Reeves*, supra, 112 Conn. 526. Because the statute is primarily designed for the benefit of the decedent, to deny the decedent the benefit of an evidentiary

rule, such as the exclusion of offers of compromise, to which he would have been entitled had he lived, would defeat the purpose of the statute. Id., 527 (holding that dead man's statute does not operate to bring in evidence otherwise protected by attorney-client privilege).

This interpretation of the statute is further supported by *Plisko* v. *Morgan*, 148 Conn. 510, 172 A.2d 621 (1961). In *Plisko*, a negligence action for the death of the plaintiff's decedent, a statement of the decedent was offered as evidence under the dead man's statute. The trial court excluded one sentence of the statement because it gave the decedent's opinion about what caused him to fall. Id., 511. The trial court reasoned that such an opinion would not have been admissible had the decedent been alive and able to testify. Id. Our Supreme Court reversed the trial court, holding that the dead man's statute should be liberally construed and the fact that the statement contained an opinion did not make it inadmissible. Id., 511–12. Thus, *Plisko* interpreted the statute liberally so as to benefit the decedent and not to put him at a disadvantage.

Accordingly, in view of the purpose of § 52-172 and the rule against admitting offers of compromise on the issue of liability, the decedent's statements were properly excluded.

## II

In her next claim, the plaintiff argues that the trial court improperly ruled that she could not ask the defendant administrator in the jury's presence whether he was willing to waive the attorney-client privilege.[2] We do not agree.

[2] The plaintiff stated this claim as follows: "The trial court erred in ruling that the jury would not be permitted to draw an adverse inference from the defendant's invocation of the attorney-client privilege." This is a mischaracterization of the trial court's ruling, which was much more narrow and merely addressed whether the plaintiff would be allowed to ask certain questions of the defendant administrator.

The following additional facts are relevant to this issue. Foley testified in his capacity as administrator of Lupien's estate. At one point during the plaintiff's cross-examination of Foley, the jury was excused and the court discussed several evidentiary matters with counsel. At that time, the plaintiff's counsel asked Foley questions regarding his discussions with the attorney representing Lupien's estate. In response to the questions, defense counsel objected on the ground that the information sought was protected by the attorney-client privilege, and the court sustained the objection.

The plaintiff's counsel then asked Foley if he understood that he could waive the privilege, and defense counsel objected to that question's being asked in the presence of the jury. The plaintiff's counsel indicated that he did not plan to ask this question in front of the jury and that he was merely "creating an offer of proof." He then asked Foley whether he was willing to waive the privilege, and Foley responded: "No. I don't choose to waive it." Following a brief colloquy, the trial court summarized its ruling as follows: "[Y]ou could ask him in front of the jury whether he waived the privilege, but if you choose to ask him, in the instructions I would instruct that he had the right to the privilege, and they should draw no conclusion from his action exercising the privilege."

The plaintiff's claim appears to be that he was prevented from asking Foley, in the jury's presence, whether he was willing to waive the attorney-client privilege. The problem with this claim is that the court did not prohibit the question, but instead ruled explicitly that the plaintiff's counsel *"could ask him in front of the jury whether he waived the privilege . . . ."* (Emphasis added.) Accordingly, the plaintiff's claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.